UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| SAMMY'S MEMORIAL TEXACO, INC., § § *Plaintiff,* § § v. § § CHEVRON U.S.A., INC., *et al.*, § § *Defendants.* § | CIVIL ACTION H-06-1543 |

### OPINION ON SUMMARY JUDGMENT

Before the court are defendant Chevron U.S.A., Inc.'s motion for summary judgment (Dkt. 24) and defendant Motiva Enterprises, L.L.C.'s motion to dismiss (Dkt. 15). Plaintiff Sammy's Memorial Texaco, Inc. has filed no response. In accordance with local rules, the court may treat defendants' motions as unopposed. *See* S.D. TEX. LOC. R. 7.4 ("Failure to respond will be taken as a representation of no opposition."). However, even on the merits, the court is of the opinion that Chevron U.S.A., Inc.'s motion for summary judgment and Motiva Enterprises, L.L.C.'s motion to dismiss, converted by the court into a motion for summary judgment,[1] should both be GRANTED.

### Background

Plaintiff Sammy's Memorial Texaco, Inc. is an independent Texaco-branded service station owned by Sami Awad. Sammy's alleges that it entered into a franchise agreement with Texaco, Inc.

---

[1]Because the court will consider matters outside the parties' pleadings when ruling on the motions at hand, namely the contract between Sammy's and Three L, Inc., Motiva's termination letter, and Three L's debranding notice, Motiva's motion to dismiss is converted into a motion for summary judgment. *See Burns v. Harris County Bail Bond Bd.*, 139 F.3d 513, 517 (5th Cir. 1998) ("When matters outside the pleadings are presented to and not excluded by the district court, the district court must convert a motion to dismiss into a motion for summary judgment." (citing FED. R. CIV. P. 12(b); *Flores v. Sullivan,* 945 F.2d 109, 110 n.3 (5th Cir. 1991)). On June 13, 2006, the court advised the parties of its intent to consider Motiva's motion as a motion for summary judgment. Dkt. 20, p.19; *see also Clark v. Tarrant County*, 798 F.2d 736, 745-46 ("[Parties] were put on fair notice at the hearing that the court might treat Tarrant County's Rule 12(b)(6) motion as a motion for summary judgment since the court accepted evidence outside the pleadings.").

on June 1, 1981. However, since July 15, 1993, Sammy's has used Texaco's trademark, displayed and maintained Texaco signage, and purchased Texaco gasoline products through Three L, Inc., an authorized jobber.[2]

In 2001, through a Chevron-Texaco merger, Chevron acquired Texaco's interest in Motiva Enterprises, L.L.C.[3] Due to the transaction's size, a Federal Trade Commission review was required under the Hart-Scott-Rodino Anti-Trust Improvements Act. *See* 15 U.S.C. § 18a. Pursuant to its findings, the FTC required the parties to divest Texaco's interest in Motiva. Under the FTC order, Chevron-Texaco had to cease using the Texaco brand. Furthermore, Motiva was granted an exclusive license to use the Texaco brand and distribute Texaco-branded gasoline until June 30, 2006. Dkt. 12, Ex. A-1, p.14; *see also id.* at Ex. A-2, pp. 18-19. Subsequently, Motiva notified Three L and other distributors that after the June 30th termination date they must stop using the Texaco brand. Dkt. 14, Ex. 2. Three L, in turn, notified Sammy's by letter dated February 22, 2006, that it was required to debrand, or cease the marketing and selling of Texaco branded motor fuel, by June 30, 2006. Dkt. 6, Ex. B.

On May 4, 2006, Sammy's commenced this lawsuit. Sammy's alleges that defendants are violating the Petroleum Marketing Practices Act (PMPA) by terminating its franchise or franchise relationship with the defendants. In turn, the defendants assert they do not have a contractual relationship with Sammy's and are therefore not bound by the PMPA. In the alternative, the defendants assert Sammy's loss of right to use the Texaco trademark comported with the PMPA.

---

[2] A "jobber" is "a wholesale merchant, especially one selling to retailers." AMERICAN COLLEGE DICTIONARY 658 (1970).

[3] In 1998, Texaco licensed Motiva to use the Texaco brand for gasoline marketing. It was pursuant to a wholesale marketing agreement with Motiva that Three L sold Texaco-branded gasoline and sub-licensed the Texaco brand to independently operated service stations like Sammy's.

**Discussion**

I.    **Summary Judgment Standards**

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The party moving for summary judgment must demonstrate that there are no genuine issues of material fact. *Warfield v. Byron*, 436 F.3d 551, 557 (5th Cir. 2006). An issue is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Cooper Tire & Rubber Co. v. Farese*, 423 F.3d 446, 454 (5th Cir. 2005). An issue is "material" if its resolution could affect the outcome of the action. *Anderson*, 477 U.S. at 248.

In responding to a properly supported summary judgment motion, the nonmovant cannot merely rely on its pleadings, but must present specific and supported material facts, of significant probative value, to preclude summary judgment. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 n.11 (1986); *Guillory v. PPG Indus., Inc.*, 434 F.3d 303, 309 (5th Cir. 2005). In determining whether a genuine issue of material fact exists, the court views the evidence and draws inferences in the light most favorable to the non-moving party. *See Anderson*, 477 U.S. at 255; *Richardson v. Monitronics Int'l, Inc.*, 434 F.3d 327, 332 (5th Cir. 2005).

II.    **Petroleum Marketing Practices Act Violation**

Section 2802(b)(1)(B) of the PMPA provides that "[a]ny franchisor may terminate any franchise" so long as "such termination is based upon a ground described in [§ 2802(b)(2)]." 15 U.S.C. § 2802(b)(1)(B). Otherwise, the PMPA authorizes civil suits by franchisees against franchisors. *Id.* at § 2805. Under the PMPA, the term "franchisor" means "a refiner or distributor (as the case may be) who authorizes or permits, under a *franchise*, a retailer or distributor to use a

trademark in connection with the sale, consignment, or distribution of motor fuel." *Id.* at § 2801(3) (emphasis added). The term "franchisee" means "a retailer or distributor (as the case may be) who is authorized or permitted, under a *franchise*, to use a trademark in connection with the sale, consignment, or distribution of motor fuel." *Id.* at § 2801(4) (emphasis added). A "franchise" is defined to include

> any *contract*:
>
> > (i)   between a refiner and a distributor,
> > (ii)  between a refiner and a retailer,
> > (iii) between a distributor and another distributor, or
> > (iv)  between a distributor and a retailer,
>
> under which a refiner or distributor (as the case may be) authorizes or permits a retailer or distributor to use, in connection with the sale, consignment, or distribution of motor fuel, a trademark which is owned or controlled by such refiner or by a refiner which supplies motor fuel to the distributor which authorizes or permits such use.

*Id.* at § 2801(1)(A) (emphasis added).

Courts have consistently held that liability under the PMPA cannot attach without a franchise relationship[4] between the plaintiff and defendant. *See, e.g.*, *Hutchens v. Eli Roberts Oil Co.*, 838 F.2d 1138, 1144 (11th Cir. 1988) ("There can be no franchise relationship under the PMPA in the absence of some direct contractual relationship."); *Denise Petroleum, Inc. v. Ocean Petroleum, Inc.*, 32 F. Supp. 2d 534, 537 (E.D.N.Y. 1999) ("[T]he plain meaning of the PMPA requires the existence of a contract in order for a franchise to exist."); *Russo v. Texaco, Inc.*, 630 F. Supp. 682, 687 (E.D.N.Y. 1986) ("As a result of the divestiture, [defendant] has no contracts with plaintiffs pertaining to the sale or distribution of motor fuel–an essential prerequisite for the existence of a

---

[4] The PMPA defines a "franchise relationship" as "the respective motor fuel marketing or distribution obligations and responsibilities of a *franchisor* and a *franchisee* which result from the marketing of motor fuel under a *franchise*." 15 U.S.C. § 2801(2) (emphases added).

'franchise' under the PMPA."). In this case, the evidence submitted by the defendants shows that Sammy's, through its owner Sami Awad, had a contractual relationship with Three L.[5] Dkt. 24, Ex. C. Three L, not Chevron or Motiva, authorized Sammy's use of Texaco's trademark and sale of Texaco gasoline products. *Id.* at p.2. Hence, the franchise relationship was between Three L, the franchisor, and Sammy's, the franchisee. Because the PMPA only permits civil suits by franchisees against franchisors, Sammy's current action against Chevron and Motiva, neither of whom is Sammy's franchisor, is not authorized under the statute.

Even if a franchise relationship existed between Sammy's and Motiva, the court would find Sammy's claims without merit. Under the PMPA, termination of a franchise relationship is prohibited unless a franchisor can demonstrate that termination is grounded upon § 2802(b)(2), the section providing grounds for lawful termination of a franchise. 15 U.S.C. § 2802(b)(1)(B). The provision relied upon by Motiva in terminating its franchise relationship with Three L is § 2802(b)(2)(C); this section permits termination grounded upon "[t]he occurrence of an *event* which is relevant to the franchise relationship and as a result of which termination of the franchise or nonrenewal of the franchise relationship is reasonable." *Id.* at § 2802(b)(2)(C) (emphasis added). Section 2802(c) enumerates twelve specific *events* that fall within the meaning of § 2802(b)(2)(C). *Id.* at § 2802(c); *see also Russo v. Texaco, Inc.*, 808 F.2d 221, 225 (2d Cir. 1986) ("Once having ascertained that an event is encompassed by one of the twelve enumerated events, a court need make no further inquiry as to the reasonableness of the termination." (citing *Lugar v. Texaco, Inc.*, 755 F.2d 53, 59 (3d Cir.1985))).

---

[5]Drawing inferences most favorable to the nonmovant, the court will presume the sales agreement to be invalid because it is expired on its face. Dkt. 24, Ex. C, p. 2. However, Sammy's did not respond to defendants' contentions that (1) this agreement with Three L was the only contract authorizing Sammy's use of the Texaco brand, and (2) no contractual relationship existed between Sammy's and the defendants. Therefore, the court will consider the sales agreement as establishing the franchise authorizing Sammy's dealings.

Motiva, in its notice of termination, specifically noted an event enumerated in § 2802(c). Dkt. 14, Ex. 3, p.3. Section 2802(c)(6) validates terminations grounded on the "loss of the franchisor's right to grant the right to use the trademark which is the subject of the franchise . . . ." 15 U.S.C. § 2802(c)(6). Motiva's loss of its right to license the Texaco trademark caused it to terminate its franchise relationship with Three L. Dkt. 14, Ex. 3, p. 3. Similarly, Three L terminated Sammy's franchise because Three L lost its authority to license the Texaco brand. Dkt. 6, Ex. B. The court finds that both events fall within § 2802(c)(6). Thus, the termination of Sammy's franchise by Three L is conclusively presumed to be reasonable as a matter of law. *See Russo*, 808 F.2d at 223 (finding Texaco's termination of Getty dealers' franchises reasonable under § 2802(b)(2)(C) because it was grounded on Texaco's loss of authority to grant the right to use the "Getty" trademark as a result of an FTC divestiture order).

## Conclusion

Accordingly, defendant Chevron's motion for summary judgement and defendant Motiva's motion to dismiss, converted into a motion for summary judgment, are GRANTED.

Signed at Houston, Texas on September 5, 2006.

_____
Gray H. Miller
United States District Judge